UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**SONYA JO COCHRAN**,
    Plaintiff,

v.  2:24-cv-920-NPM

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

---

## OPINION AND ORDER

Plaintiff Sonya Jo Cochran seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings. (Doc. 14), Cochran filed an opening brief (Doc. 15), the Commissioner responded (Doc. 18), and Cochran replied (Doc. 19). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.   Eligibility for Disability Benefits and the Administration's Decision**

    **A.   Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

twelve months.[1] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

### B.     Factual and procedural history

On September 7, 2021, Cochran applied for disability insurance benefits. (Tr. 23, 69, 159). She asserted an onset date of December 27, 2019, alleging disability due to the following: severe anxiety and panic attacks, schizophrenia, post-traumatic stress disorder (PTSD), borderline personality disorder, attention-deficit hyperactivity disorder (ADHD), bipolar disorder, chronic migraines, chronic kidney stones, restless leg syndrome (RLS), and "abused." (Tr. 69, 193). As of the onset

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[3] *See* 20 C.F.R. § 404.1511.

2

date, Cochran was 39 years old, and she had earned her GED. (Tr. 70, 192). She previously worked as a power-washing cleaner. (Tr. 63, 194, 202).

On behalf of the administration, a state agency [4] reviewed and denied Cochran's applications initially on May 18, 2022, and upon reconsideration on May 2, 2023. (Tr. 23, 69, 89–91). At Cochran's request, Administrative Law Judge (ALJ) Maria Northington held a hearing at which Cochran waived her right to counsel. (Tr. 41). On January 17, 2024, the ALJ issued a decision finding Cochran not disabled. (Tr. 20–40). The administration's Appeals Council denied Cochran's request for review. (Tr. 1–7). She then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[4] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove

4

disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that while Cochran had worked since the alleged onset date of December 27, 2019, it did not amount to substantial gainful activity. (Tr. 26). Nonetheless, the ALJ noted that this "post-alleged onset date work activity" cuts against the grain of her disability-benefits application. *Id.*[5] At step two, the ALJ characterized Cochran's severe impairments as: bipolar disorder, depression, anxiety, ADHD, and mild obesity. *Id.* At step three, the ALJ determined she did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 27).

As a predicate to step four, the ALJ arrived at the following RFC:

> The claimant has no exertional limitations, which implicitly includes the performance of medium, light, and sedentary work as defined by the regulations. The claimant has no identifiable limitations for sitting, standing and/or walking in an eight-hour workday. The claimant has no postural limitations except no climbing of ropes and scaffolds, but ladders are not affected. The claimant ***retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work***. In the course of work, the claimant is to have ***no in-person contact with the public with the exception that incidental contact and telephonic contact are not precluded***. The claimant is to have

---

[5] The ALJ further observed that Cochran also attended college-level courses since the alleged onset date. (Tr. 33).

5

>   *only occasional contact with coworkers and supervisors*, occasional being defined as occasional interaction and coordination, *but not necessarily proximity to the same*. (Tr. 30) (emphasis added).

Relying on a vocational expert's testimony, the ALJ found that Cochran had past relevant work as a "cleaner commercial institution." (Tr. 33). Finding no conflict between the RFC and the functional demands of this occupation, the ALJ found Cochran remained able to work as a cleaner (DOT #381.687-014, heavy, SVP 2) as actually and generally performed. *Id.* Moreover, the ALJ went on to find that even if Cochran was prevented from performing her past relevant work, she could perform other work that exists in significant numbers in the national economy. (Tr. 34). In support, a vocational expert testified that an individual of Cochran's age, education, work experience, and RFC can perform work similar to the following representative occupations:

- *Cleaner Industrial,* DOT #381.687-018, medium, SVP 2, 17,166 jobs;
- *Sweeper Cleaner Industrial,* DOT #389.683-010, medium, SVP 2, 16,508 jobs;
- *Box Sealing Inspector*, DOT #641.687-014, light, SVP 2, 4,764 jobs;
- *Order Caller*, DOT #209.667-014, light, SVP 2, 11,056 jobs.[6]

---

[6] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are

6

(Tr. 34–35). Thus, for purposes of the Act, the ALJ concluded Cochran was not disabled from December 27, 2019, the alleged onset date, through January 17, 2024, the date of decision. (Tr. 35–36).

## II.   Analysis

Cochran's appeal asks whether a reversal of the ALJ's decision is warranted because the RFC did not incorporate verbatim the opinions of a consultative examiner whose medical opinion the ALJ found persuasive.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020)

---

skilled. The expert's job numbers were for the national economy.

(quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. Cochran has failed to demonstrate any reversible error concerning the ALJ's treatment of the consultative examiner's opinion.

During the initial review of Cochran's claim by the state agency, a psychologist—Dr. Sharon Ames-Dennard—provided a consultative opinion that contributed to the agency denying Cochran's application on initial review. (Tr. 73–76). Likewise, the ALJ found Ames-Dennard persuasive when finding Cochran not disabled for purposes of the Act. Nevertheless, Cochran suggests that Ames-Dennard's opinion points to a more restrictive RFC than the one formulated by the ALJ, and that the RFC should have incorporated Ames-Dennard's opinions about Cochran's functional limits verbatim. From there, Cochran contends that such an

RFC would have precluded both past relevant work and any other sufficiently available work such that the five-step evaluation would have compelled a finding of disability. But juxtaposing Ames-Dennard's opinion with the decision of the ALJ reveals little to no meaningful difference between the two, and to the extent there are any material differences, Cochran fails to show how the ALJ's decision might present any reversible errors.

Ames-Dennard's opinion begins by identifying Cochran's severe and non-severe impairments. As for severe mental impairments, Ames-Dennard found only one: anxiety. She otherwise found Cochran's depressive, bipolar, and trauma-related disorders to be non-severe. (Tr. 73). But, in Cochran's favor, the ALJ found that her bipolar disorder, depression, anxiety, and ADHD were all severe. (Tr. 26).

Both Ames-Dennard and the ALJ found that Cochran's symptoms were not as intense, persistent, or functionally limiting as alleged. (Tr. 31, 74). As for the four broad domains of mental functioning that are considered when assessing the severity of a claimant's mental impairments,[7] there was also no daylight between them. They

---

[7] At step two of the sequential analysis, an ALJ rates the severity of a claimant's mental impairment by evaluating its impact across four domains of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3); SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996). For each domain, the ALJ assesses the limiting effects using a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. § 404.1520a(c)(4). An "extreme" limitation in a particular domain means the claimant cannot function in that area independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. § 404.1520a(c)(4). "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. *Cf.* 20 C.F.R.

both found moderate impairments[8] in the same two areas: interacting with others and concentrating, persisting, or maintaining pace. (Tr. 28–29, 73). And they both found mild impairments in the other two: understanding, remembering, and applying information; and adapting or managing oneself. *See id*.

Their ultimate conclusions about the functionally limiting effects of these impairments also mirror each other. With respect to the ability to maintain attention and concentration for extended periods, Ames-Dennard concluded that Cochran was "capable of attending/conc[entrating]/persisting during her completion of work related tasks" such that she was capable—at a minimum—of performing simple, routine, repetitive tasks ("SRRTs"). (Tr. 75–76). Likewise, the ALJ formulated an RFC limiting Cochran to understanding, remembering, and carrying out "simple instructions" and performing "simple routine tasks as consistent with unskilled work." (Tr. 30).[9]

---

§ 404.1520a(c)(4) & (d).

[8] Because a moderate limitation is, by definition, not a serious one, it may not limit an individual's ability to perform work-related functions. If that is the case, the ALJ need only explain as much at step four. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). Otherwise, the ALJ must account for the moderate mental-function limitation when formulating the RFC. *See* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). This can be done by limiting the claimant to simple, routine, unskilled work when there is medical evidence indicating that the claimant can perform such work despite the moderate mental-function limitation. *See Winschel*, 631 F.3d at 1180.

[9] In Cochran's favor, the RFC limited her to "simple instructions" even though Ames-Dennard opined that her ability to carry out ***detailed*** instructions was ***not*** significantly limited. (Tr. 75).

As for the abilities to interact appropriately with the public, and to work in coordination with or in proximity to others without being distracted by them, Ames-Dennard opined that Cochran "may [function] best in a setting requiring limited social engagement." (Tr. 76). Following suit, the ALJ limited Cochran to "no in-person contact with the public with the exception that incidental contact and telephonic contact are not precluded," and to "occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same." (Tr. 30).[10]

Cochran suggests a point of distinction between the two: while Ames-Dennard opined that Cochran could complete simple "1-2 step tasks" and maintain concentration, persistence, and pace while doing so, there is—as Cochran would have it—no corresponding limitation in the RFC. But while the ALJ found Ames-Dennard's opinion persuasive, there is no requirement that an ALJ adopt every limitation from a persuasive opinion. *See Guth v. Comm'r of Soc. Sec.*, No. 2:21-cv-106-JLB-NPM, 2022 WL 8211404, *9 (M.D. Fla. Aug. 5, 2022) ("The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise found persuasive."), *report and recommendation adopted*, 2022 WL 4115784

---

[10] Again, in Cochran's favor, the RFC was more limiting than what Ames-Dennard suggested was necessary because Ames-Dennard opined that Cochran's abilities in the following areas were ***not*** significantly limited: maintaining socially appropriate behavior, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them. (Tr. 75–76).

11

(Sept. 9, 2022). Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. § 404.1546(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

Besides, it appears the RFC incorporates this 1-2 step task limitation. It limited Cochran to simple instructions and simple routine tasks consistent with unskilled work. And the regulations define "unskilled work" as:

> work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. … For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568. For example, "fold the towel and place it in the stack" would be unskilled work involving no more than two steps. And the administration further describes unskilled work as requiring the ability to "understand and remember ***very short*** and simple instructions." Program Operations Manual System (POMS) DI 25020.010 (SSA April 5, 2007) (emphasis added). This, too, is consistent with tasks involving no more than two steps.

But fatal to this appeal, Cochran fails to offer a cogent argument, much less demonstrate, that the RFC's limitation to simple instructions and simple routine

12

tasks consistent with unskilled work does not account for a "1-2 step task" limitation. Any such suggestion is made in no more than a conclusory fashion. Moreover, Cochran makes no attempt to show that a "1-2 step task" limitation would preclude either a return to past relevant work or any other sufficiently available work. These undeveloped arguments are forfeited.[11] (Social Security Scheduling Order, Doc. 12 at 3); *see Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). In sum, Cochran fails to offer even a colorable argument that the ALJ committed any harmful and thus reversible error.

Finally, the ALJ's determination that Cochran could perform her past relevant work as a cleaner or perform other unskilled work—despite the moderate limitation at issue—is supported by substantial evidence. Cochran's mental status examinations during the adjudicatory period were essentially normal, and she was able to manage symptoms of anxiety, depression, and bipolar disorder with medication. (Tr. 438–441, 443, 684, 687, 691–692, 696, 701, 706–707, 811, 813). Treatment notes in 2019 record that working helped Cochran stay focused on her

---

[11] Cochran also makes a conclusory assertion that her moderate limitation in concentrating, persisting, or maintaining pace would require a disability finding because she would need more breaks than an employer would tolerate. (Doc. 15 at 10-11). But she ignores the fact that Ames-Dennard found no such limitation. (Tr. 75 (finding no significant limitation in Cochran's "ability to complete a normal workday and workweek … and to perform at a consistent pace without an unreasonable number and length of rest periods")).

13

goals, and through counseling, she began to present with no problems regarding an anxious or depressed mood, anger, alcohol or drug use, disordered thinking, or poor concentration. (Tr. 31, 438–441, 443). And in 2020, Cochran was noted as being "more stable than she has been in her entire lifetime" due to being sober and drug-free, following her medication regimen, working, and attending school. (Tr. 691, 701, 706).

Cochran worked and attended school (with a heavy caseload) since her alleged onset of disability. (Tr. 52–53, 55). She was also a caregiver for her father from December 2019 through March 2020, before he passed away from cancer. (Tr. 50, 697). Cochran shops online, completes household chores and yard work, cares for her dog, prepares frozen meals, and drives without any restrictions or limits, all of which require concentration and persistence for extended periods of time. (Tr. 51, 72, 74, 217, 237, 803–804). All told, more than a scintilla of evidence that a reasonable person would find adequate to support the RFC considering the moderate limitation in Cochran's ability to concentrate, persist, or maintain pace. *Cf. Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2014) (restricting the claimant to simple and routine tasks adequately accounted for the moderate limitation related to concentration, persistence, and pace); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) (same); *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013) (same).

14

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on September 30, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge